Filed 7/2/24  Williams v. Los Angeles County Sheriff's Dept. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BRIAND WILLIAMS, | B323866 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 21STCV16669 |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yolanda Orozco, Judge.  Affirmed.

Briand Williams, in pro per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

_____

Briand Williams filed suit on April 30, 2021.  By all indications, he did not serve any defendant.  The trial court held a case management conference on August 31, 2021.  No one appeared.

On September 23, *2021*, the court heard an order to show cause why the case should not be dismissed for failure to appear and for failure to prosecute.  No one appeared.  The court dismissed the case the same day.

On August 5, *2022*, Williams filed a motion to set aside and to vacate the dismissal pursuant to section 473 of the Code of Civil Procedure.  Unspecified code citations are to this code.

On September 1, 2022, the court denied Williams's section 473 motion.

The court ruled Williams's untimely motion violated section 473's jurisdictional time limit of six months.

Williams moved for reconsideration on September 14, 2022. The court denied this motion on October 6, 2022.  Motions for reconsideration require a showing of new facts relating to the motion at hand.  The court ruled Williams had not offered facts or law that Williams could not have presented at the first hearing.

Williams cited *Lewis v. Superior Court* (1985) 175 Cal.App.3d 366 (*Lewis*), which the trial court stated did not give it discretion to waive or toll section 473's six-month requirement.

Williams filed a notice of appeal on October 6, 2022.

The trial court correctly applied the six-month time requirement of section 473.  "This six-month time limitation is jurisdictional; the court has no power to grant relief under section 473 once the time has lapsed."  (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928.)

Williams cites *Loeb v. County of San Diego* (2019) 43 Cal.App.5th 421, 430, which is not on point because it did not involve section 473.  In the context of a ruling on a summary judgment motion and a discussion of competing proposed verdict forms, the *Loeb* court held that a trial court can correct its own

error if it, on reflection, has concluded an earlier interim order was erroneous. (*Ibid.*)

The same goes for *Lewis*, *supra*, 175 Cal.App.3d 366, which Williams also cites. The *Lewis* case tolled a *statute of limitation* when compliance with the statute was impossible. (*Id.* at p. 380.) The decision did not involve section 473.

*Lewis* is inapplicable for another reason as well. *Lewis* involved a plaintiff's situation that made it literally *impossible* to meet a deadline. Williams has not made a showing of impossibility. For this same reason, his citation of section 3531 of the Civil Code is inapt. This five-word statute states "The law never requires impossibilities."

First we review *Lewis*.

Plaintiff Lewis retained attorney Bartlett, who engaged in pre-complaint settlement discussions with a defense insurance company. Bartlett calendared *March 16*, 1984, for the filing of a complaint for Lewis if parties had not finalized the settlement. (*Lewis, supra,* 175 Cal.App.3d at p. 370.) On *March 12*, 1984, a car hit Bartlett, who "suffered severe, life-threatening injuries to his head and body that totally disabled him mentally and physically beyond the March 17, 1984, deadline for filing plaintiff's personal injury complaint. Bones in Bartlett's forehead were crushed; his temple bones, facial bones and nose were fractured; his ribs and legs suffered multiple fractures, and he developed a cerebral hematoma. [¶] Emergency surgery was performed and Bartlett remained in the . . . intensive care unit *until recovering consciousness* on March 22." (*Ibid.*, italics added.)

Williams offered argument and evidence about the extent of hardships he has faced, which are lamentable. They do not, however, match the impossibility of the *Lewis* situation.

Williams attached his declaration and exhibits to his section 473 motion. We review these pages in some detail.

Williams's August 2022 declaration stated the following.

Williams has mobility and vision impairment issues and has been homeless for years. It is a very difficult task to travel from San Diego by bus to attend court hearings. Williams once traveled from San Diego for a Los Angeles court hearing, but the court made him wait. He missed his ride back and was stranded in Los Angeles. "The streets are very cold everywhere and now since [Williams] is in far worst health, and homeless as well this court is not going to care at all."

On August 18, 2021, the wind blew a heavy overhead car hatch down on Williams's head. Weeks later, a hospital diagnosed his condition as post concussion syndrome. Williams asserted he was in the emergency room on or about September 8 to 9, 2021 and since August 2021 has had a difficult time trying to function and take care of himself.

Williams "did not come to remember" about the scheduled case management conference because "he had been placed on bed rest and pills."

Williams declared that two doctors saw him, as described in Exhibits A and B.

Exhibit A is one page of a hospital's nine-page "After Visit Summary" stating a doctor saw Williams due to "headache" and that the diagnosis was "post concussion syndrome." This visit apparently was September 8 or 9, 2021, or both, at a Cedars-Sinai facility listing a phone number in the (310) area code.

4

Apparently Williams selected this Los Angeles hospital for medical care.  The hospital's recommendation was to schedule a visit with a Cedars-Sinai neurologist in Los Angeles.

Exhibit B is one page of a three-page "after visit summary" of a doctor visit on November 11, 2021.  The locale again was a Cedars-Sinai facility listing a (310) area code phone number.  "Today you were seen for fatigue.  We think this is due to the head trauma that you had several months ago."  The instructions were to schedule an appointment with a neurologist and to return for a follow-up appointment in five weeks.   There was also a referral to a "dietitian/nutrition" facility, again in Los Angeles.

Williams declared a doctor, on December 2, 2021, concluded he needed physical, speech, and occupational therapy, as detailed in Exhibit C.  Exhibit C is a packet of selected pages:  pages one, four, five, and six of a six-page "after visit summary" of a Los Angeles Cedars-Sinai doctor visit on December 2, 2021.  Page one stated Williams saw a doctor "for:  Consult.  The following issues were addressed:  Post concussion syndrome and Chronic post-traumatic headache, not intractable."  This page also stated Williams could pick up a prescribed medication at a pharmacy in Inglewood, California.  The page listed three referrals:  one to speech therapy at a Los Angeles address and one each to occupational and physical therapy with no listed addresses.  The remainder of these pages is a generic description of post-concussion syndrome that includes the statement that "[s]ymptoms usually go away on their own over time."  There are other instructions, including to "[g]radually return to your normal activity level.  If a certain activity brings on your symptoms, stop or slow down until you can do the activity without it triggering your symptoms."

Williams declared he saw more doctors on December 16, 2021 and on February 24, March 17 and May 5, 2022, as detailed in Exhibits D, E, and F. Williams declared he also suffered a stroke during this time.

Exhibit D is one page of a three-page "after visit summary" dated December 16, 2021. This Cedars-Sinai form summarized Williams's Los Angeles visit as a follow-up concerning "Fatigue, unspecified type, Class 2 obesity . . . and Hyperlipidemia . . . ." The "Instructions" were that Williams had been seen for fatigue, that Williams should continue with his prescribed medication, that Williams was referred for a sleep study to rule out another possible cause of his fatigue, that Williams was started on a cholesterol medication, and that he should start changing his diet to eat fruits and vegetables and to stop eating candy and fast food. The form advised Williams to pick up his prescriptions at a pharmacy in Inglewood, California.

Exhibit E is one page of a two-page "after visit summary" dated February 24, 2022. This Cedars-Sinai form summarized Williams's Los Angeles visit as a follow-up concerning hyperlipidemia, asymptomatic microscopic hematuria, and chronic low back pain. The form recommended Williams return in about three months and noted his March 2022 appointment with a Los Angeles neurologist.

Also included in this exhibit are 12 pages of generic information about strokes. These pages appear to be some type of general brochure or handout. They do not mention Williams. No medical record in Williams's motion suggests he suffered a stroke.

Exhibit F is a one page reminder that Williams was scheduled for a May 5, 2022 appointment with a Los Angeles

6

neurologist.  There also is one page of a two-page "after visit summary" dated May 5, 2022.  This Cedars-Sinai form summarized Williams's Los Angeles visit as a follow-up appointment.  Multiple redactions and an omitted page make it difficult to draw further conclusions concerning this visit.  The form recommended Williams return in about three months.

Exhibit G is one page of a two-page "after visit summary" dated August 4, 2022.  This Cedars-Sinai form summarized Williams's Los Angeles visit as a follow-up appointment.  The doctor instructed Williams to get a sleep study to rule out sleep apnea as a cause of Williams's hypersomnia.  The form noted Williams's upcoming appointment with a Los Angeles doctor in September 2022.  There is also a one-page form entitled "sleep study referral" with a telephone number for appointments.

Williams concluded his declaration with the statement that "Plaintiff is unable to adequately represent myself as need be in a clearly and consciously manner so that Plaintiff, can express his thoughts and speak clearly without the possibility of stuttering over his vocabulary when trying to address the court in a respectful manner as required so I am asking for this time to heal."

Williams supplied the trial court with documents suggesting his medical situation is at best a partial explanation of his delay in pursuing his litigation.  Williams included only portions of his records.  He redacted parts of the pages he did supply.  No page supports Williams's claim that he suffered a stroke.

Williams evidently has suffered ongoing problems with headaches and other medical issues.  The documents he submitted suggest Williams was able to make and keep medical

7

appointments in Los Angeles.  They do not describe a situation like the *Lewis* case.

## DISPOSITION

We affirm the dismissal.  We award no costs.  The respondents did not appear or file briefing.


WILEY, J.


We concur:


GRIMES, Acting P. J.


VIRAMONTES, J.